Suzanne BARGER (Now Gilstrap), Plaintiff in Error,

v.

Steve M. MIZEL, Defendant in Error.

No. 41459.

Supreme Court of Oklahoma.

Feb. 14, 1967.

Jack B. Sellers, Sapulpa, for plaintiff in error.

Loeffler & Allen, Bristow, Lionel Cohen, Tulsa, Joe A. Moore, Professor of Law, Memphis State University, Memphis, Tenn., of counsel on the brief, for defendant in error.

BERRY, Justice.

Plaintiff in error, as plaintiff in the trial court, brought an action to recover damages for personal injuries received in a one car automobile accident. The amended petition charged the accident resulted from negligence of defendant Mizel, owner of the vehicle, of the driver Lang, and the General Motors Corporation, manufacturer of the vehicle involved. At the trial plaintiff dismissed the action as to the corporate defendant. The trial court sustained a demurrer to the evidence as to defendant Mizel, after which the jury returned a verdict against the operator, Lang. The appeal was dismissed as to Lang, and the single issue presented by this appeal involves the propriety of the trial court's order and judgment in respect to defendant Mizel.

Relevant circumstances disclose that on October 31, 1963, the parties involved all occupied apartments in Friendship House, in Tulsa, Oklahoma. Defendant, whom plaintiff had known about sixty days, owned a 1963 Chevrolet Corvette, admittedly a highly powered vehicle, commonly referred to as a sports car. Plaintiff, a registered dental hygienist, was a night student at Tulsa University, as was Lang, and both owned sport-type automobiles of a less powerful type, and evinced some interest in sports cars generally. On this evening, after completing their classes, they drove their individual cars to the apartment where both were extended an invitation to join a social gathering in defendant's apartment, which they accepted. Upon entering the apartment Lang accepted a mixed drink of liquor, but plaintiff declined at that time. After visiting briefly plaintiff went to her own apartment, changed into casual clothes and attempted to complete a long distance call, consuming some 15–25 minutes time.

Upon rejoining the party plaintiff accepted a mixed drink, and visited with other guests, and walked outside to examine defendant's sports car, when Lang approached with the keys to the car. Accepting an invitation to accompany him to another boy's home both, according to plaintiff, poured out their drinks and drove the Corvette to one Duenner's residence. After meeting Duenner's family and examining a sports car this boy was repairing, the three young people re-entered the Corvette to return to the party. However, on the return trip they traveled west on the 51st Street bypass a short distance before turning around. Lang was driving and both plaintiff and Duenner at one time asked that he slow down, which he did immediately. Thereafter both plaintiff and Duenner drove the car for short distances, but when near the apartment Lang resumed driving. To this point, other than having cautioned Lang once as to speed, nothing had occurred to cause plaintiff any apprehension, since Lang had driven in a proper and reasonable manner.

At the intersection of South St. Louis and Thirteenth Streets Lang was proceeding in low gear at approximately 10 miles per hour when he attempted an abrupt right turn onto St. Louis. When ready to straighten up after the turn Lang accelerated suddenly, pushing the accelerator to the floor. Lang lost control of the car and swerved back and forth eventually leaving the road and striking a tree, the collision throwing plaintiff into the windshield and causing permanent, disfiguring injuries.

The petition charged negligence in that, as owner of the Corvette sports car, defendant knew this vehicle was powerful and difficult to operate; Lang was a negligent, careless and reckless driver lacking experience in operating this type vehicle; having such knowledge and knowing Lang was drinking, defendant was negligent in granting Lang possession and permission to drive this car.

Defendant's answer admitted ownership of the vehicle involved, that he gave Lang permission to operate same at the time involved, and that the wreck occurred, but denied that he was present at or had anything to do with the accident or was negligent in any respect. Defendant alleged plaintiff's assumption of risk and contributory negligence. These allegations were denied by plaintiff.

The appeal from the trial court's judgment involves consideration of the ruling upon the evidence presented in support of the issues raised by these pleadings. An extended summation of the evidence is unnecessary, since all the facts which the evidence reasonably tends to establish and all inferences and conclusions reasonably deducible therefrom stand admitted. Before determination of the issues urged as grounds for reversal, we consider it appropriate to note all evidentiary matters favorable to plaintiff.

Defendant owned a new model Chevrolet Corvette, of which perhaps only one or two had been delivered in Tulsa. The car had a 340 horsepower engine which would permit rapid acceleration to 60 miles per hour within a distance of 100 feet in about 6 seconds, depending upon the individual driver, and was capable of a speed of 130 miles per hour. This car, classified as a "big bore" machine by the Sports Car Club of America, had rapid acceleration, quick steering response and a short wheelbase. Lang owned and drove a smaller and less powerful type sports car, but prior to this day never had driven a car as powerful as this Corvette. At the time Lang was given the car keys defendant had mixed more than one drink of intoxicants, and knew that Lang was drinking, and also that Lang and defendant had been involved in a prior auto accident.

Plaintiff contends the trial court erred in sustaining defendant's demurrer to the evidence. This contention is based upon the general text rule, stated in 8 Am.Jur.2d, Automobiles, etc. § 573:

"* * * The owner of a motor vehicle who loans the vehicle to an incompetent or unfit person, knowing, or from the circumstances being charged with knowledge, that such person is incompetent or unfit to drive, may be held liable for an injury negligently inflicted by the use made of it by that driver, although such use at the time of the injury is beyond the scope of the owner's consent, provided it is established that the injury complained of was proximately caused by the driver's incompetence or unfitness. While a motor vehicle is generally not regarded as an inherently dangerous instrumentality, and the owner thereof is not generally liable for its negligent use by another to whom it is entrusted, liability may arise if the owner permits operation of his motor vehicle by one whom he knows or should know to be so incompetent, inexperienced, or reckless as to make the vehicle a dangerous instrumentality when operated by such person."

It is asserted that this Court has adopted such rule, as evidenced by our decisions in Coker v. Moose, 180 Okl. 234, 68 P.2d 504; Berg v. Bryant, etc., Okl., 305 P.2d 517, and National Trailer Convoy, Inc. v. Saul, Admx., Okl., 375 P.2d 922, which will be discussed hereafter. By way of application of the rule plaintiff argues this automobile was a fast, quick steering, racing machine, unsuited for operation upon public streets by an inexperienced driver whose judgment was impaired by drinking. And, when defendant permitted Lang to take over possession of the car under these circumstances such conduct constituted negligence as a matter of law, particularly since the type of vehicle has a definite bearing upon the reasonableness of the owner's entrustment of the chattel.

The amended petition under which defendant was brought into the action charged negligence upon three different grounds. One act of negligence charged was in permitting Lang to drive the car when defendant knew, or should have known, that Lang was a negligent, careless and reckless driver. Plaintiff attempted to introduce testimony concerning a prior automobile collision, at an unspecified date, between vehicles operated by Lang and defendant. Objection to such testimony was sustained by the trial court. No evidence revealed the time or circumstances surrounding such occurrence. Generally evidence of an automobile driver's negligence on other occasions, or of habitual or customary manner of driving, is inadmissible to

prove negligence. This for the reason that conduct at other times, and places are unreliable criteria for determining what a person's conduct was at a particular time and place. 61 C.J.S. Motor Vehicles § 515; Harrod v. Sanders, 137 Okl. 231, 278 P. 1102; McCarley v. Durham, Okl., 266 P.2d 629; Gillette Motor Transport, Inc. v. Kirby, 208 Okl. 68, 253 P.2d 139; Washita Valley Grain Co. v. McElroy, Okl., 262 P.2d 133.

■ There was no other evidence relative to the claim that Lang was a careless and reckless driver. Plaintiff's testimony showed that prior to the accident Lang operated the car in a reasonable and proper manner, except for one instance of what she considered excessive speed, which Lang corrected upon plaintiff's request to slow down. The allegation that defendant knew or should have known Lang was a careless, reckless and negligent driver was unsupported by any evidence.

■■ The second ground of negligence allegedly arose from defendant's permitting Lang to drive knowing him to be inexperienced in operating this type of automobile, and in failing to warn him of the characteristics and unusual nature of this vehicle. Contrary to plaintiff's argument, the fact that various makes and models of automobiles with 340 horsepower, and many having power plants greatly in excess of that figure, are available to the motoring public at all times, is a matter of common knowledge. Likewise, it is a matter of casual observation to know that such vehicles are operated upon the public highways by drivers of all ages and of both sexes. Neither excessive power nor latent speed heretofore have provided grounds for finding that a licensed driver who essays operation of such a vehicle without special fitness tests and preliminary instructions is guilty of negligence.

■ The evidence showed that both plaintiff and Lang owned and had driven sports type cars of other makes which, except for the power plants, operated in the same or essentially the same manner. These cars, too, were authorized for racing competition by the manufacturers. Additionally, the evidence showed that prior to the accident not only did Lang operate the car, but it was driven by plaintiff and the passenger Duenner. Each of these drivers took note of the power factor involved, because of which the plaintiff felt it was "too much to handle." Reduced to essentials, the argument appears to be that, because Lang had not driven such a car, the defendant was negligent as a matter of law in failing to advise him as to the wheelbase and horsepower of the vehicle. When no limitation or restriction is applicable to the general public in such matters, it is impossible to infer the existence of negligence and proximate cause, from an owner's failure to advise another individual concerning a presumed inherent danger involved in casual operation of a stock item of this motor age.

Finally, it is charged that because Lang was known to have been drinking intoxicants during the evening the defendant was negligent in permitting him to drive this car under the circumstances. What, or what quantity of liquor Lang drank, or may have drunk, immediately prior to beginning the unfortunate excursion principally involves the weight of the evidence. There was no evidence tending to show Lang's faculties or driving abilities were impaired to any extent. Plaintiff's testimony was that from the time the trip began Lang drove sensibly and reasonably, with exception of the one speeding incident, and at no time was his conduct and mode of driving other than perfectly normal.

Plaintiff relies upon the decisions above cited, and cases from other jurisdictions, in support of the contention that liability attaches where the owner of a vehicle entrusts its operation to an inexperienced, reckless, incompetent driver, or a driver known to be intoxicated or addicted to intoxicants, under circumstances which are known or should have been known to the owner.

In Berg v. Bryant, etc., supra, we considered the statute involved to be an application of the common law principle, fixing liability upon the supplier of a chattel to be used by one whom the supplier knew, or should have known, was likely to use same in a manner involving unreasonable risk to others. The result in Berg rests upon both the statute relating to unlicensed drivers, and direct evidence of minority and lack of experience in operating any vehicle. Also see annotation in 168 A.L.R. 1380.

In Saul, supra, we again recognized the exception to the common law rule of non-liability of an owner for negligence of the person to which a chattel is entrusted, although the liability therein attached by reason of the rule of respondeat superior. However, in that case there was uncontroverted evidence concerning the negligent driver's unfitness, and bearing directly upon the master's knowledge, or means of knowledge, to have known of this unfitness.

It is unnecessary to discuss decisions from foreign jurisdictions and the factual situations to which this rule relied upon by plaintiff has been applied. Most, if not all, of these cases are reviewable in various annotations upon the subject of an owner's liability for the negligence of one to whom an automobile is loaned or hired. See annotations in 100 A.L.R. 920; 163 A.L.R. 1418; 168 A.L.R. 1364.

As early as Jamar v. Brightwell, 162 Okl. 124, 19 P.2d 366, this Court recognized the general rule of common law nonliability, except for instances of negligence in entrusting a potentially dangerous machine to a person incompetent to handle same.

In Anderson v. Eaton, 180 Okl. 243, 68 P.2d 858, a trial court's action sustaining a demurrer to plaintiff's evidence was affirmed, upon the ground that an owner's knowledge the party to whom an automobile was entrusted was a fast driver was not alone sufficient to fasten liability for damages to third persons upon the owner.

In Anthony v. Covington, 187 Okl. 27, 100 P.2d 461, the text rule above quoted is recognized, subject however, to the requirement that it is combined negligence of the owner and operator which fastens liability upon the owner. In that case we stated that as a strict proposition the owner's liability is not derivative but dependent upon negligence of the driver. And, the effect of the holding requires an affirmative finding of the driver's negligence. Otherwise stated, the owner's liability does not attach unless it is established that the driver's unfitness and incompetence proximately caused the injury, and the owner's negligence is not established until it is shown that the driver was incompetent and this was, or should have been known to the owner.

■ Viewing the matter in the light most favorable to plaintiff, as the trial court was required to do, it appears that application of the rule, which fixes liability for negligence upon an owner who entrusts an automobile to another, whose negligence results in injury to a third person, cannot be extended to the defendant. We do not subscribe to the rule that an automobile is an inherently dangerous instrumentality when operated upon the highways. See Koger v. Hollahan, 144 Fla. 779, 198 So. 685, 131 A.L.R. 886.

■ To hold defendant liable for entrusting his vehicle to a careless, reckless or negligent driver, it was necessary to show defendant had knowledge Lang was incompetent, careless or reckless, or that in exercise of ordinary care defendant should have known this by reason of the facts and circumstances. See 8 Am.Jur.2d, Automobiles etc. § 573; Williamson v. Eclipse Motor Lines, 145 Ohio St. 467, 62 N.E.2d 339, 168 A.L.R. 1356, and annotations at page 1364. To reach this result would require first that we assume the vehicle involved as produced by the manufacturer and offered for sale to the public, was inherently dangerous. From this we must infer that because Lang had not driven this car, or its exact counterpart, he was incompetent to drive, both by reason of having drunk intoxicants and for lack of experience or both. Then, having adopted these inferences we must infer further that no accident

would have occurred in any event except for defendant's failure to instruct Lang as to operation of the car, in view of these facts and circumstances.

■ Consistently, since the decision in St. Louis & San Francisco Ry. Co. v. Model Laundry, 42 Okl. 501, 141 P. 970, the rule has been that a legitimate inference must have as its basis testimonial evidence which is certain. Also see annotations in 95 A.L.R. 162, including Oklahoma cases recognizing and applying this rule.

In Lawson v. Anderson & Kerr Drilling Co., 184 Okl. 107, 84 P.2d 1104, syllabus 1 states:

"An inference of negligence must be based upon something other than mere conjecture or speculation, and it is not sufficient to introduce evidence of a state of facts simply consistent with or indicating a mere possibility, or which suggests with equal force and leaves fully as reasonable an inference of the non-existence of negligence. The inference of negligence must be the more probable and more reasonable inference to be drawn from the evidence."

To reach the conclusion sought by plaintiff would necessitate placing inference upon inference. This we decline to do. The trial court correctly sustained defendant's demurrer to the evidence.

The final contention urges that the trial court erred in excluding competent and material evidence. Plaintiff qualified a witness (Simmons) as an expert concerning the driving, repair, maintenance and operating characteristics of sports cars. The complaint is that, although there was no objection to this witness testifying as an expert, the trial court unduly restricted the scope of inquiry into matters concerning the details of operation, and operating characteristics of this type of automobile.

Without verbatim recitation, the record reflects the excluded testimony fell into three categories: (1) evidence concerning the power of the particular car; (2) difference in steering mechanism; (3) whether an inexperienced driver could operate such vehicle properly, and whether defendant should have warned Lang of handling characteristics.

■ As to evidence relative to the presumed excessive power, the evidence of both plaintiff and Duenner, the other driver, positively established this characteristic of the vehicle, which fact also was brought out on cross-examination. The evidence of the expert was not required to prove this fact, particularly since this was a matter within the knowledge and understanding of ordinary persons.

■ Further error is claimed in the trial court's exclusion of the expert's testimony concerning steering characteristics of this car. The testimony was offered in an attempt to establish a comparison between steering mechanism of the car involved and another type of Chevrolet automobile. The pleadings made no issue that the steering mechanism of the Corvette automobile was defective, or made the vehicle inherently dangerous. Under such circumstances evidence by which plaintiff sought to compare the steering ratio of the Corvette with another vehicle properly was excluded as immaterial to the issue involved.

■ Plaintiff particularly objects to exclusion of proffered expert testimony that an inexperienced driver could not operate such an automobile without prior experience, instructions and warning or admonition as to the handling characteristics. The ultimate issue to be determined involved this question, and whether defendant was negligent in entrusting Lang with operation of such a vehicle. It is recognized and generally held that opinion evidence by an expert regarding the ultimate fact in issue is inadmissible. Maben v. Lee, Okl., 260 P.2d 1064; Washita Valley Grain Co. v. McElroy, Okl., 262 P.2d 133; Lewis v. Schaffer, Okl., 369 P.2d 639; 38 A.L.R.2d § 17, at page 50, et seq.

■ The conclusion in Maben, supra, upon authority of both text and decisional law, was that expert testimony was not admissible to establish the very issue the jury was required to determine. The ultimate

issue in the present case was whether an inexperienced driver could operate a Corvette properly without prior experience, instruction or admonition. In Maben we stated that the standard of liability was negligence and the issue, whether defendant's acts under all the facts and circumstances violated such standard, should not be determined by so-called expert testimony which attempts to decide that issue. That reasoning likewise is appropriate herein. The trial court properly excluded the proffered expert testimony.

Judgment affirmed.

IRWIN, V. C. J., and DAVISON, BLACKBIRD, HODGES, LAVENDER and McINERNEY, JJ., concur.

WILLIAMS, J., dissents.